STATE of Alaska, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Benjamin T. SALZWEDEL and Dorothy E. Salzwedel, Appellee.

No. 3976.

Supreme Court of Alaska.

June 15, 1979.

Abigail G. Dodge, Michael Sewright, Asst. Attys. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Leroy J. Barker, L. G. Berry, of Robertson, Monagle, Eastaugh & Bradley, Anchorage, for appellee.

OPINION

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and DIMOND, Senior Justice.

BOOCHEVER, Justice.

The superior court awarded Benjamin and Dorothy Salzwedel $16,733.76 in costs

and attorney's fees[1] assessed against the State of Alaska in a condemnation proceeding. The state appeals certain aspects of that award. We find that the award improperly included two kinds of expenses: first, the Salzwedels' attorney's fees and costs resulting from proceedings before this court; and second, the Salzwedels' attorney's fees and costs resulting from their unsuccessful efforts to secure compensation for the taking of an expectancy of a renewal of a lease. Accordingly, we remand so that these sums may be subtracted from the Salzwedels' fee award.

The State Department of Highways filed a declaration of taking of a parcel of land owned by Benjamin and Dorothy Salzwedel. The Salzwedels agreed to authority for the taking, but contended that additional compensation should include the going concern value of their business and the value of an expectancy of a lease on an adjacent parcel. The state moved for partial summary judgment on the lease claim. The superior court granted the motion, based on the clear authority of *Stroh v. Alaska State Housing Authority*, 459 P.2d 480 (Alaska 1969). The superior court, however, awarded the Salzwedels fees and costs for unsuccessfully defending against the state's motion because the state could have moved for summary judgment much earlier.[2] Both parties unsuccessfully petitioned this court for review of the order adverse to them. [Supreme Court Case Nos. 3667 and 3851] While the petitions were before this court, the parties settled the case. The superior court made a second fee award to the Salzwedels, indicating that it would supercede the earlier award.

The state challenges the superior court's inclusion in the awards of any fees and costs related to the supreme court proceedings and the lease expectancy claim.

## I. SUPREME COURT COSTS

A portion of the Salzwedels' fee award represents costs incurred on petitions for review to this court.[3] The state argues that the superior court had no jurisdiction to award fees for proceedings before the supreme court. The supreme court, according to the state, awards fees and costs arising from supreme court proceedings. It makes those awards pursuant to Appellate Rule 29:

*Costs.*

(a) *Dismissal or Denial.* If an appeal is dismissed or petition denied by this court, costs shall not be allowed to the appellee or respondent, unless otherwise ordered by the court.

(b) *Affirmance of Judgment.* In all cases of affirmance of a judgment or any order or decision of the superior court, costs shall be allowed to the appellee or respondent unless otherwise ordered by the court.

(c) *Reversal of Judgment or Order.* In cases of reversal by this court of any judgment, order or decision of the superior court, costs shall be allowed the appellant or petitioner, . . . unless otherwise ordered by the court.

(d) *Attorney's Fees.* Where costs are allowed in this court, attorney's fees may also be allowed in an amount to be deter-

---

1. This decision uses the terms "fees" and "costs" interchangeably to mean both attorney's fees and court costs.

2. The trial court reasoned that the exchange of appraisal reports in May 1976 informed the state that it differed with the Salzwedels over whether their loss of the expected renewal of the lease on parcel 19 was a compensable interest. The state, according to the trial judge, by waiting until September 2, 1977 to move for summary judgment on the lease claim, caused the Salzwedels expense in preparing on the summary judgment claim and therefore was obligated for those expenses.

3. The Salzwedels incurred $3,462.50 of their $16,733.76 fee award in connection with two matters before the supreme court. The lion's share, $3,147.00, represented the cost to the Salzwedels of unsuccessfully petitioning this court for review of summary judgment on the lease claim. The remainder, $315.50, was the cost to the Salzwedels of defending against the state's unsuccessful petition for review of the award of attorney's fees in connection with the summary judgment motion.

mined by the court. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.

The Salzwedels argue that Civil Rule 72(k) governs fee awards for all condemnation-related proceedings, including appeals to the supreme court. It provides:

> *Costs.* Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:
>
> (1) the taking of the property is denied, or
>
> (2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken, or
>
> (3) the action was dismissed under the provisions of subdivision (i) of this rule, or
>
> (4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner. Attorney's fees allowed under this subdivision shall be commensurate with time committed by the attorney to the case *throughout the entire proceedings.* [emphasis added]

The Salzwedels argue that the phrase "throughout the entire proceedings" permits the superior court to award costs for condemnation-related supreme court petitions or appeals.

■ We do not agree. The phrase "throughout the entire proceedings" in Civil Rule 72(k) refers to all phases of the proceedings" in Civil Rule 72(k) refers to all

phases of the proceedings before the superior court. It does not mean proceedings before the supreme court.

■ Appellate Rules govern appellate proceedings. In *Continental Insurance Co. v. United States Fidelity and Guaranty Co.,* 552 P.2d 1122, 1127 (Alaska 1976), we held that it was error for the superior court to award fees for a supreme court appeal:[4]

> Article IV, Section 15 of the Alaska Constitution provides in part that the Supreme Court shall ". . . make and promulgate rules governing practice and procedure in civil and criminal cases in all courts." Pursuant to this constitutional grant, this court promulgated Rule 29, Appellate Rules, which vests the discretion to determine costs and attorney's fees pertaining to appeals in this court. In short, by rule in general, this court has the authority to award costs in connection with an appeal to the Supreme Court of Alaska.

■ We acknowledge "the special status" of condemnees, *City of Anchorage v. Scavenius,* 539 P.2d 1169, 1175 (Alaska 1975), as persons who are in court merely because the government happens to need their property for a public purpose. Appellate Rule 29 can accommodate that special status. It provides for fees to successful appellants or petitioners, and thus a successful property owner will receive fees. The rule also permits the court to disallow fees for successful petitioners or appellants, and thus this court could disallow costs to a successful government petitioner or appellant.[5] If the property owner unsuccessfully petitions or appeals, as here, the rule permits this court to award fees.[6]

4. In *Continental,* the mandate we had issued in the previous appeal directed that costs be awarded to neither party.

5. *Cf. City of Anchorage v. Scavenius,* 539 P.2d 1169 (Alaska 1975) (when state appeals a master's award in a condemnation proceeding to the superior court, state may not recover attorney's fees even though it prevails).

6. Furthermore, the guidelines in Appellate Rule 29 are specific to petitions for review or appeals, and thus produce more sensible results

for allowing fees than would Civil Rule 72(k). The allowance or disallowance of fees in Appellate Rule 29 is keyed to the outcome of the particular petition or the particular appeal. The allowance of fees under Civil Rule 72(k) is basically keyed to the outcome of the entire condemnation action. In a particular case, for example, assume the property owners were unsuccessful in their petition and assume, *arguendo,* they met the requirements of Civil Rule 72(k)(2) for award of fees, namely that "the award of the court was at least ten (10) percent

Thus, the superior court was without jurisdiction to award the Salzwedels fees for supreme court proceedings.[7]

## II. LEASE–EXPECTANCY COSTS

■ The trial court awarded the Salzwedels expenses they incurred in developing their claim for the taking of an expectancy of a lease renewal.[8] Both parties agree that Civil Rule 72(k)(4), as interpreted by *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242 (Alaska 1974), governs the propriety of that award. Civil Rule 72(k)(4) provides that a property owner's costs and attorney's fees may be assessed against the condemning authority when such "allowance . . . appears necessary to achieve a just and adequate compensation of the owner."[9]

In *Stewart & Grindle*, three property owners appealed from the denial of their motions for costs. All three cases settled out of court for amounts far greater than the state's initial offer, but the property owners did not meet any of the three specific conditions for fees in Civil Rule 72(k)(1), (2) or (3).[10] We held that owners who did not meet any of these conditions were entitled to fees under Civil Rule 72(k)(4) if the expenses were "necessarily incurred":

We believe that Rule 72(k)(4) when construed in the framework of the "just compensation" clauses of the United States and Alaska constitutions *does* entitle the property owner to be made whole for expenses necessarily incurred in connection with the condemnation of his property. Without such a rule, the State forces a property owner to pay a greater portion of the costs of a public project than any other taxpayer must pay by afflicting him with the unavoidable expenses of *condemnation*. Placing such a burden on the property owner is no more than just than assessing a levy against him but no others.

524 P.2d at 1250 (emphasis in original).[11]

Our holding in *Stewart & Grindle* does not mean that the state must become the guarantor of costs incurred in advancing every possible legal theory an owner may have in an eminent domain proceeding.[12]

---

larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken." The overall outcome of the condemnation action should not require a fee award for a petition for review when the petition may have been frivolous.

7. The Salzwedels have never asked this court to award them the expenses they incurred in the petitions for review. We do note, however, that the reasons which are discussed in Part II of this opinion for holding that the superior court's grant of lease-related fees was error, would prevent this court from awarding the Salzwedels costs for their petition for review, even if costs had been timely requested. The $315.50 spent by the Salzwedels in resisting the state's petition for review would require different analysis, had the issue been timely presented.

8. The Salzwedels also incurred legal expenses resulting from the taking of the parcel which they owned. The government does not resist payment of any of those expenses.

9. *See* page 19 *supra* for text of Civil Rule 72(k).

10. The taking had not been denied; there was no court award ten percent higher than the amount deposited by the state; and neither the state nor the court had dismissed the condemnation action.

11. The federal and state constitutional guarantees of just compensation when the government takes private property for a public use are set forth in U.S.Const. amend V; Alaska Const., art. I, § 18.

12. In *City of Anchorage v. Scavenius*, 539 P.2d 1169 (Alaska 1975), we held that requiring a property owner to pay the government's legal fees when the government successfully appealed a master's compensation award would chill the owner's exercise of his or her right to just compensation. That holding does not suggest the government must pay the owner's fees when the government *successfully challenges* an owner's claim.

Of course, an owner is not barred from advancing unprecedented claims. When the owner is represented under a contingent fee arrangement, whether such claims are advanced will depend primarily on whether counsel is willing to invest the time and effort in pursuing the claim. Otherwise, the owner must decide whether to incur the expense required to prosecute the claim. In either event, we do not believe that the state should bear the costs of the owner's unsuccessful speculative efforts.

The Salzwedels sought compensation for the loss of an expected renewal of a lease. They had leased a parcel for a number of years, and the state did not renew the lease in 1973 because it needed the land for an airport access road. In *Stroh v. Alaska State Housing Authority*, 459 P.2d 480, 482 (Alaska 1969), we squarely held that a tenant's expectation of renewal of a lease was not a compensable interest.[13] Thus, expenses developing this claim were not "necessarily incurred" within the meaning of Civil Rule 72(k)(4).[14]

We cited two factors in *Stewart & Grindle* which indicated that the owners' expenses were necessarily incurred: land with no established market value and an initial grossly inadequate offer of compensation by the state. 524 P.2d at 1250–51.[15] The *Stewart & Grindle* factors do not characterize the Salzwedels' expectancy of a lease renewal. That interest had no compensable value. The state offered zero dollars for the lease expectancy, deposited zero dollars for it, and eventually paid zero dollars for it.

█ The trial court implicitly viewed the government's "late" successful motion for summary judgment as equivalent to an inadequate offer of compensation.[16] This reasoning is faulty. The government is un-der express, constitutional obligation to compensate the property owner adequately for a taking. Civil Rule 56 govern motions for summary judgment and neither it, nor the federal rule on which it is based,[17] imposes any duty to move for summary judgment, let alone move at some unspecified time prior to the date set for the close of motions.[18] Furthermore, the Salzwedels themselves could have moved for partial summary judgment on the question of law involved in the lease-expectancy claim, thereby avoiding whatever expenses that an earlier motion by the state could have avoided.

We hold that it was error to award fees incurred in unsuccessfully seeking compensation for the expectancy of renewal of the lease. The case is remanded for modification of the awards for costs and fees in accordance with this opinion.

REMANDED.

BURKE, J., not participating.

13. We stated:
    A tenant's right of renewal of a lease refers to a legal right, and this exists only when the lease expressly grants to the tenant the option to renew the lease at the end of its term. A mere expectation, or even probability, that the lease will be renewed based upon past practice and present good relations between landlord and tenant, is not a legal right of renewal. It is nothing more than a speculation on chance. Intentions which are subject to change at the will of a landlord do not constitute an interest in land so as to confer upon the tenants something to be valued and compensated for in a condemnation action. 459 P.2d at 482. The Salzwedels' lease did not have a right of renewal.

14. We do not decide that a property owner's expenses in developing a compensation claim that the government defeats can never be reasonably incurred. We would have a different situation if the Salzwedels' claim involved an issue we had not decided and one about which other jurisdictions were divided.

15. In *Greater Anchorage Area Borough v. 10 Acres*, 563 P.2d 269 (Alaska 1977), we awarded fees based on Rule 72(k)(4) and the *Stewart & Grindle* gloss on the rule:
    In this case, as in *Stewart & Grindle*, the amounts initially offered to [the defendants] were sufficiently low to "have led the property owners to believe that it would be necessary to retain an attorney in order to obtain just compensation for the taking of their property."
    563 P.2d at 273 (footnote omitted).

16. The Salzwedels imply that the timing of the state's motion for partial summary judgment was in bad faith. The record does not suggest this, and the trial court did not so find.

17. Fed.R.Civ.P. 56.

18. The state moved for partial summary judgment two weeks before the date set for close of motions. The trial judge admitted the motion was "technically timely."