Curwood GACKSTETTER and Betty Gackstetter, Appellants,

v.

STATE of Alaska, Appellee.

No. 4976.

Supreme Court of Alaska.

Oct. 24, 1980.

---

Teresa L. Foster, Cole & Downes, Fairbanks, for appellants.

William R. Satterberg, Jr., Asst. Atty. Gen., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and ROWLAND, Superior Court Judge.

## OPINION

RABINOWITZ, Chief Justice.

This appeal arises from an eminent domain proceeding. In 1976, the State of Alaska, in connection with the construction of the New Steese Expressway, condemned 3.464 acres of Curwood and Betty Gackstetter's property. Dirt and gravel, useful as fill for the cuts and depressions created by the highway construction, were removed by the state and deposited elsewhere along the project.[1]

■ The case was referred to a master for determination of just compensation to be paid to the Gackstetters. The master awarded the Gackstetters $24,740.00, based on a conclusion that the highest and best use of the property was residential. It is undisputed that applicable Fairbanks North Star Borough zoning ordinances and restrictions prohibited development of the subject property as a gravel pit. The award was reached by determining the fair market value of the Gackstetters' property before and after the taking.[2]

The Gackstetters appealed to the superior court. The state then moved for partial summary judgment, seeking a ruling that

---

1. The Gackstetters' property was bounded by Engineer Creek Basin to the north and the bowl occupied by Fairbanks to the south. Materials utilized from the Gackstetters' land were deposited elsewhere on the project to fill the depression existing in the adjacent valley. The Gackstetters maintain they should be compensated for the value of the material taken from their land.

2. Fair market value is defined as the amount of money "which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses for which the land was suited and might in reason be applied." 4 J. Sackman, Nichols on Eminent Domain § 12.-2[1] (rev. 3d ed. 1979) (footnotes omitted).

evidence of the value of the fill material would be inadmissible at trial. The superior court granted the motion, ordering that:

Any evidence of special value or benefit to the property by virtue of the condemnation or due to the condemnor's needs or uses shall be inadmissible.

The Gackstetters have appealed this ruling of the superior court.[3]

On appeal, the Gackstetters do not contest the master's finding as to highest or best use of the property, nor do they dispute the compensation award as it was determined by the fair market value method. They admit that evidence of the value of the fill material was properly excluded from the determination of fair market value, since the value of the fill was created solely by the taker's demand for it. *United States v. Cors,* 337 U.S. 325, 332, 69 S.Ct. 1086, 1090, 93 L.Ed. 1392, 1399 (1949); *United States v. Miller,* 317 U.S. 369, 375, 63 S.Ct. 276, 280, 87 L.Ed. 336, 343 (1943). Instead, the Gackstetters proceed on the theory that fair market value is not constitutionally mandated, is inapplicable on the instant facts, and did not accord them just compensation. In their view, a form of unjust enrichment resulted from the state's non–compensable use of the fill material, and because of this, the measure of just compensation should be the value of the land to the condemnor. In addition, the Gackstetters contend there were material issues of fact in dispute which rendered summary judgment inappropriate.[4]

■ We cannot agree that employment of the fair market value test in the case at bar precluded the Gackstetters from receiving just compensation. It is a basic tenet of eminent domain law that just compensation is determined by what the owner has lost and not by what the condemnor has gained. In *Nichols* it is stated that:

The just compensation to which an owner is entitled when his property is taken by eminent domain is regarded in law from the point of view of the owner and not of the condemnor. In other words, just compensation in the constitutional sense is what the owner has lost, and not what the condemnor has gained.[5]

The United States Supreme Court defined just compensation in the following manner:

The just compensation required by the Constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public.

*Bauman v. Ross* 167 U.S. 548, 574, 17 S.Ct. 966, 976, 42 L.Ed. 270, 283 (1897); *see also Kimball Laundry Co. v. United States,* 338 U.S. 1, 5, 69 S.Ct. 1434, 1437, 93 L.Ed. 1765, 1772 (1949). This court has followed the same principle in measuring just compensation:

The term just compensation implies full indemnification to the owner for the property taken. In other words the property owner should be placed as fully as possible in the same position as he was prior to the taking of his property.

*Ketchikan Cold Storage Co. v. State,* 491 P.2d 143, 150 (Alaska 1971).

---

**3.** The order of partial summary judgment was entered on August 13, 1979. The final judgment was entered in this case on September 25, 1979, pursuant to a stipulation for entry of final judgment, signed by the parties on August 13, 1979. That stipulation provided that the Gackstetters retained the right to appeal the superior court's order of partial summary judgment, and that the final judgment would be regarded as the operative document for appeal time computations.

**4.** The Gackstetters raised the following issues:

1. Whether the highway project in question was designed to take advantage of fill material on Defendant's property.

2. Whether from a purely engineering standpoint, and taking into account the goals of the highway project, it was necessary for the route to cross Defendant's property.

3. The amount of fill removed and used in the project, and the dollar value of such fill.

**5.** 3 J. Sackman, Nichols on Eminent Domain § 8.61 (rev. 3d ed. 1979) (footnotes omitted). *See also id.* at § 12.21; Uniform Eminent Domain Code, committee comment to § 1004, reprinted in *id.,* App. D–3 at App. 344.133.

Fair market value is usually equated with just compensation, as it provides an objective standard by which to measure the loss to the owner.[6] Nevertheless, as the Gackstetters point out, fair market value is not the end in itself, but merely a means to achieve the goal of just compensation. 4 J. Sackman, Nichols on Eminent Domain § 12.2 (rev. 3d ed. 1979); *see also Babinec v. State*, 512 P.2d 563, 570 (Alaska 1973) *appeal after remand*, 586 P.2d 966 (Alaska 1978).[7] However, none of the authorities cited by the Gackstetters support their contention that value–to–the–taker is an appropriate measure of just compensation in the factual context of this case. In particular, the Gackstetters' reliance on *State v. Hammer*, 550 P.2d 820 (Alaska 1976), is misplaced. In *Hammer* we held that a temporary loss of profits during relocation, necessitated by condemnation, was compensable. In criticizing the argument that no recovery should be had for the destruction of a business incidental to condemnation, we stated:

> This approach has several serious flaws. First, it conflicts with our principle of compensation, which, instead of looking at the benefit to the condemnor as a measure of compensation, looks to the loss to the owner, as measured by an objective standard.[8]

In the case at bar, the state appropriated residential property from the Gackstetters for which the Gackstetters were justly compensated through employment of a fair market valuation measure. We thus conclude that the superior court did not err in its determination that consideration of value to the state of the fill and gravel it received from the Gackstetters' land was an inappropriate measure of just compensation.[9]

AFFIRMED.

BOOCHEVER, J., not participating.

---

**6.** *Ketchikan Cold Storage Co. v. State*, 491 P.2d 143, 150 (Alaska 1971).

**7.** In 4 J. Sackman, Nichols on Eminent Domain § 12.1[5] (rev. 3d ed. 1979) (footnotes omitted), it is stated that:
> The basic concepts of value which have been developed with relation to property acquired by means of eminent domain fall generally into three categories:
> (a) Value to taker,
> (b) Value to owner,
> (c) Market value.
> Value to the taker, while ordinarily rejected as a standard, is occasionally considered as an element in the determination of value where, as a factual proposition, the present adaptability of the property for the projected use is a determinative factor in creating a demand for such property by purchasers in the ordinary market. In other words, where special availability of the property for public use is an element in the establishment of general market value it may be considered.

**8.** *State v. Hammer*, 550 P.2d 820, 824 (Alaska 1976).

**9.** Our holding makes it unnecessary to address the Gackstetters' contention that the existence of genuine issues of material fact precluded the entry of partial summary judgment.