Allen VEZEY, and 4.624 Acres, more
or less, Appellant and
Cross–Appellee,

v.

STATE of Alaska, Appellee and
Cross–Appellant.

Nos. S–2888, S–2889.

Supreme Court of Alaska.

March 16, 1990.

Rehearing Granted in Part and
Decision as to Fees Deferred in
Part April 30, 1990.
As Amended April 30, 1990.
Rehearing Granted as to Fees
Sept. 20, 1990.

William Satterberg, Jr., Law Office of William Satterberg, Fairbanks, for appellant and cross-appellee.

E. John Athens and Linda L. Walton, Asst. Attys. Gen., Fairbanks, Douglas B. Baily, Atty. Gen., Juneau, for appellee and cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, Justices.

## OPINION

RABINOWITZ, Justice.

### I. BACKGROUND.

In 1982 the State condemned a 200–foot wide strip (totalling 4.624 acres) through Allen Vezey's land.[1] The land taken was to be used for a realignment of the Nome–Council Road. Vezey opposed both the necessity of the taking and the amount of just compensation offered.

In November 1983, Vezey and the State stipulated to narrowing the taking from 200 feet to 100 feet. In exchange, Vezey agreed to withdraw his objection to the necessity of the taking. The taking was thereby reduced from 4.6 acres to approximately 2.3 acres.

The basis for Vezey's objection to the State's estimate of just compensation was that the State had failed to take into account the property's mineral resources, in particular gold and gravel.[2]

---

1. Vezey acquired a one-third interest in a 48–acre parcel called Mineral Survey 1148 (M.S. 1148) (a mining claim patented in 1917) in 1978. The remaining two-thirds interest is owned by Gordon Hughes. Pursuant to an agreement between Vezey and Hughes, Vezey is litigating on Hughes' behalf and is bearing all of the costs and attorney's fees. M.S. 1148 straddles Hastings Creek approximately 11 miles east of Nome at Mile 9.2 on the Nome–Council Road, which passes through the property.

2. The State's appraiser had estimated that the highest and best use for Vezey's property was "recreational/residential use." With regard to gold and gravel on the property, the appraiser had stated:

> In this case, we are mainly concerned with the surface value of the Subject parcel and have given little consideration to any subsurface mineral value since the market appears to give it little significance.
> While it is likely that there are gold deposits on the parcel, we have not been furnished with drilling records or other proof. The presence of gold and its amount, then, is conjectural and the ultimate recoverable mineral value entirely speculative.

Vezey maintained that the State's failure to drill the property to ascertain its subsurface mineral value rendered its appraisal invalid. Therefore, Vezey filed a motion for an order directing the State to core drill the property. Vezey supported his motion with affidavits and testimony that it was highly probable that M.S. 1148 contained gold. In the alternative, Vezey requested an interim award of costs under Civil Rule 72(k) so that he could do the drilling himself. Vezey claimed that he did not have the financial resources to pay for drilling costs. After a hearing, the superior court granted Vezey the following relief:

> I am not directly ordering the State to drill this property, only ordering that they cannot go onto the property without having core sampled and analyzed for gold on the property.

The State then petitioned for review. We granted review and reversed, stating in part:

> The responsibility for estimating just compensation lies with the acquiring authority and the estimate is reviewable, if at all, only for bad faith. Here there is no credible evidence that the state acted in bad faith. The order of the superior court is REVERSED.

*State v. 4.62 Acres, More or Less,* 704 P.2d 1340 (Alaska 1985) (citations omitted).

In the interim, discovery proceeded as to other issues. In June 1984, the superior court granted the State a protective order which read in part as follows:

> (1) Evidence of the condemnor's uses or prospective uses of the condemned land, including the unit value of materials or minerals removed or to be removed from the property is inadmissible, as is evidence of special value of the property due to the condemnor's needs, or any other value enhancement due to the project.

> The reported gravel bearing soils on Parcel 9 have not been given additional value since we have not been furnished with engineering reports confirming the quality or quantity of the material.

3. The superior court's order was based in part on the following grounds:

(2) Before the unit price value of minerals or materials present may be introduced even as a factor to be considered by the trier of fact, the landowner must establish a probable market for the particular mineral or material, sufficient to allow a reasonably accurate estimate of future demand to be made (as to time, quality and quantity of materials required). Such market may not be based upon the needs of a condemning authority, and does not include gold.

Thereafter, in May 1985, Vezey propounded interrogatories to the State which in part required the State to:

> 2. List all the sources of gravel known to the State of Alaska in the Kuskokwim–Delta Region downstream of Aniak. . . .

> 3. List all projects funded by the State of Alaska since 1974 that are located in the Yukon–Kuskokwim–Delta Region and that utilized sand, gravel, or rock. . . .

> 4. List all projects in the Yukon–Kuskokwim Delta Region that are currently being contemplated by the State of Alaska. . . .

The State objected to these interrogatories and the superior court thereafter ruled:

> (1) That the motion to compel is denied.

> (2) That the state need not answer any discovery requests pertaining to the prospective uses of or need for, or planned acquisition of gravel on projects, or the state's past acquisitions or attempted acquisitions of gravel.[3]

In February 1984, the State informed Vezey that, pursuant to AS 19.05.070, the State would vacate a pre-existing right-of-way (established by prescriptive easement). This vacation benefitted Vezey because his

(1) Producing the information requested and answering the interrogatories propounded would be extremely burdensome to the State of Alaska.

(2) Based upon the prior order entered by this court on June 15, 1984, which established the law applicable to this case, the information sought is irrelevant, as stated in that order.

parcel would, as a result, be cut into two pieces instead of three, thereby facilitating mineral or other development of the land.

The State subsequently filed a motion to deduct the value of the benefits that accrued to Vezey as a result of the State's agreement to vacate the old right-of-way from the value of the strip of land taken from Vezey. The superior court rejected the State's motion.

In January 1986, Vezey filed a motion for partial summary judgment "holding that the State's demand[s] for gravel for its projects in Western Alaska are admissible as evidence to be utilized by the trier of fact in determining 'just compensation' in the instant case." On March 10, 1986, the superior court approved a settlement agreement between Vezey and the State, relating to the State's then pending motion for partial summary judgment. The agreement provided in part as follows:

> It is agreed that if that motion is successful, the parties will mutually petition the court for a new trial date, and for additional time to produce appraisals.

> If that motion is unsuccessful the case will be settled as follows:

> (a) $6,800 will be paid above the $3,200 initially estimated by the state's appraiser as the value of the property....

> (b) The condemnees retain the right to move the court for an award of attorneys fees and the State of Alaska retains the right to move to offset its attorneys fees against any recovery of attorneys fees the condemnees may be awarded....

> (c) Each party retains the right to appeal all rulings of the court, made thus far as well as all rulings in connection with the pending motion and future attorneys fee and cost motions.

*Cf. Gackstetter v. State,* 618 P.2d 564, 566 n. 3 (Alaska 1980).

Thereafter, the superior court ruled against Vezey on the motion for partial summary judgment. In ruling, the court reasoned in part as follows:

> Because the demand for aggregate by the State substantially distorts and sets the market price due to the fact that most if not all of the market for aggregate involves state and state-funded projects, under either the "total" exclusionary rule (expressed in [*State v. Arnold,* 218 Or. 43, 343 P.2d 1113 (1959)] *ARNOLD II* or the narrow rule of *ARNOLD I,* [218 Or. 43, 341 P.2d 1089 (1959)] (overruled in *Arnold II*), evidence of State demand cannot be considered without reversible error. Whether the reasoning of *ARNOLD II* or *ARNOLD I* governs, defendant's motion in the instant case must be denied and partial summary judgment issued in favor of the plaintiff-condemnor as a matter of law.

> It should be further noted that, as this court previously held on June 15, 1984, before *any* evidence of the unit price or value of any minerals or aggregate can be introduced, defendant-condemnee *must* establish that there is a potential market. That market must be demonstrated by proof beyond mere speculation. To date defendant has produced *no showing* of such a market and has only shown minimal sales on the very project for which this condemnation was brought.

(Emphasis in original.) Since the court denied Vezey's motion, the scheduled trial was not held and the case proceeded to consideration of attorneys' fees and costs. Judgment was thereafter entered and this appeal and cross-appeal followed.

## II. INTERIM AWARD OF DRILLING COSTS UNDER CIVIL RULE 72(k).

■ Vezey argues that the superior court erroneously denied his request for an interim award of costs under Civil Rule 72(k) for the expenses of drilling in order to ascertain whether the condemned parcel contains gold, and if so, in what quantities.[4]

---

**4.** Civil Rule 72(k) provides:

Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:

(1) the taking of the property is denied; or

(2) the plaintiff appeals from the allowance of the master and the defendant does not appeal; or

(3) the award of the court was at least ten (10) percent larger than the amount deposited

Vezey contends that the condemnee is entitled to an award of expenses necessarily incurred to accurately establish fair market value, citing *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1249–50 (Alaska 1974), and *Greater Anchorage Area Borough v. 10 Acres More or Less*, 563 P.2d 269, 274–75 (Alaska 1977). Vezey further argues that he is entitled to such an award because to deny it "would so chill the right to secure just compensation as to nullify the effectiveness of the constitutional provisions." *City of Anchorage v. Scavenius*, 539 P.2d 1169, 1175 (Alaska 1975).[5]

Our analysis of the relevant case law, as well as the text of Civil Rule 72(k), leads us to the conclusion that the superior court did not err in denying Vezey's request for an interim award of drilling costs. The "chilling" argument advanced by Vezey is based upon a decision where the issue was a potential award against the condemnee of the condemnor's costs. *Scavenius*, 539 P.2d at 1175. Thus, it does not directly apply here as Vezey implies. We did, however, state the following in *Scavenius:*

> In promulgating Rule 72(k) in its present form, the then members of the Alaska Supreme Court gave consideration to deterrence of unwarranted litigation. Such a consideration obviously fostered the requirement that the owner secure an increase over the amount deposited or previously awarded by 10 percent to be entitled to costs and attorney's fees. *Thus, he and his attorney must calculate whether his claim warrants the out-of-pocket expenses which must be incurred as well as the time and effort which must be devoted to the particular proceeding.* These considerations should result in preventing most frivolous appeals.... [W]e are not justified in awarding costs and attorney's fees in situations not specified in Rule 72(k).

539 P.2d at 1176 (emphasis added, footnote omitted). In *State, Dep't of Highways v. Salzwedel*, 596 P.2d 17 (Alaska 1979), we explained that "[o]ur holding in *Stewart & Grindle* does not mean that the state must become the guarantor of costs incurred in advancing every possible legal theory an owner may have in an eminent domain proceeding." *Id.* at 20 (footnote omitted). Thus, *Scavenius* and *Salzwedel* indicate that Rule 72(k) contemplates that the condemnee must risk out-of-pocket expenses, such as drilling costs, in challenging the State's estimate of just compensation; the condemnee will be able to recover those expenses if he or she receives an award which is 10 percent higher than the State's estimate.[6]

## III. DEMAND FOR GRAVEL BY THE STATE FOR USE ON OTHER PROJECTS AND BY PRIVATE CONTRACTORS FOR STATE-FUNDED PROJECTS.

Here we address the following questions: whether or not the court erred in granting a protective order to the State;[7] whether the court correctly denied Vezey's motion to compel discovery;[8] and whether the

by the condemning authority or the allowance of the master from which an appeal was taken by the defendant; or

(4) the action was dismissed under the provisions of paragraph (i) of this rule; or

(5) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.

Attorney's fees allowed under this paragraph shall be commensurate with the time committed by the attorney to the case throughout the entire proceedings.

5. We reject the State's argument that this issue was decided in the previous interlocutory appeal to this court.

6. We note that Civil Rule 72(k) contemplates an award of costs at the conclusion of the proceeding, and does not contemplate an interim award.

7. As noted previously, the superior court protected the State from discovery as to the State's uses or prospective uses of the condemned land; its prospective uses, need for, or planned acquisition of gravel on other projects; and the State's past acquisitions of gravel on public-funded projects. The superior court also excluded evidence of any special value arising from the State's demands in connection with the instant project, as well as other enhancement due to the projects.

8. Vezey moved to compel the State to respond to its discovery requests regarding the State's past and future demands for gravel in Western Alaska. The superior court ruled that no evi-

court erred in denying Vezey's motion for partial summary judgment.[9]

### A. Value of Vezey's Gravel to the State for Purposes of This Project in Determining Just Compensation.

In *Gackstetter v. State*, 618 P.2d 564 (Alaska 1980), we noted the general proposition of eminent domain law:

that just compensation is determined by what the owner has lost and not by what the condemnor has gained. In *Nichols* it is stated that:

The just compensation to which an owner is entitled when his property is taken by eminent domain is regarded in law from the point of view of the owner and not of the condemnor. In other words, just compensation in the constitutional sense is what the owner has lost, and not what the condemnor has gained.

618 P.2d at 566 (citing 3 J. Sackman, *Nichols' The Law of Eminent Domain* § 8.61 (rev. 3d ed. 1979)). Exceptions to the general rule of course exist. Value to the taker may be relevant, for example, if "as a factual proposition, the present adaptability of the property for the projected use is a *determinative factor* in creating a demand ... by purchasers in the ordinary market." *Gackstetter*, 618 P.2d at 567 n. 7 (quoting 4 *Nichols'* § 12.1[5]) (emphasis added). However, we reject Vezey's reliance on this exception in light of the record before us, which does not suggest

that the State displaced other, "ordinary market" demands for gravel from Vezey's land. The State's own decision to take advantage of known gravel deposits in realigning the Nome–Council road is no substitute for such "ordinary" demands. The superior court therefore did not err in ruling that the value of Vezey's condemned land could not be established by evidence of the value to the State of gravel taken for State use in realigning the Nome–Council road.

### B. Demand for Gravel by the State for Use on Other Projects and by Private Contractors for State–Funded Projects in Determining Vezey's Just Compensation.

The State argues that any evidence of demand by the State for gravel for use on State projects other than the Nome–Council road realignment project, and evidence of any demand of private contractors for gravel for use on other State-funded projects, is not admissible. The State thereby contends that the superior court's protective order in favor of the State, denial of Vezey's request to compel discovery, and denial of Vezey's motion for partial summary judgment were correct rulings. Vezey counters that such demands are relevant and properly admissible because they are elements in the establishment of the gravel's market value, and thus in the land's fair market value.[10] In our view the superior court erred in its resolution of this issue. Based on *State v. Alaska Conti-*

dence of any condemning authority's demand for gravel on any public project could be considered by the trier of fact for the purpose of determining the existence of a market for Vezey's gravel.

9. Vezey's motion for partial summary judgment sought to establish that evidence of sales by material source owners to private sector contractors, and/or the State, for ultimate use upon projects unrelated to the taking in question in the case at bar is admissible to establish the existence and extent of a market for Vezey's gravel. The superior court ruled that such evidence is inadmissible and therefore not discoverable.

10. The superior court and the State cite *Alaska State Housing Authority v. DuPont*, 439 P.2d 427,

429 (Alaska 1968), *Bridges v. Alaska Housing Authority*, 375 P.2d 696, 698–99 (Alaska 1962), and *Babinec v. State*, 512 P.2d 563, 566–67 (Alaska 1973), for the general proposition that sales to condemning authorities are not admissible to provide the value of the property sought to be condemned. These cases are inapposite, as they deal with sales of comparable property to condemning authorities, not sales of mineral resources from the condemned property to condemning authorities. Also, contrary to the State's assertion, *State v. Alaska Continental Development Corp.*, 630 P.2d 977 (Alaska 1980), does not stand for the proposition that the increased value due to condemnor's demand must be excluded. Rather, it stands for the proposition that inclusion of value enhancement attributable to the project is generally prohibited. *Id.* at 983.

*nental Development Corp.,* 630 P.2d 977 (Alaska 1980), *City of Valdez v. 18.99 Acres, More or Less,* 686 P.2d 682 (Alaska 1984), and *Arnold I,* 341 P.2d 1089, we conclude that evidence of any demand either by the State or by private contractors for gravel for use on State projects not implicated in this condemnation proceeding is admissible in regard to the issue of just compensation.

The general rule that a property owner is not entitled to compensation for any increase in value of his property due to the project for which his property was condemned "does not preclude an owner from receiving compensation for value added to the property by an unrelated public project which took no portion of the tract involved." *Alaska Continental Develop-*

*ment,* 630 P.2d at 983.[11] We adopt today the rationale of *Arnold I,* that:

> In estimating the value of the property it is entirely proper to consider the state's need for it if that need is not a special factor influencing the value which is placed upon it in the market. If the state's need for the property is in competition with other similar demands for it[,] the state's participation in the market may be considered in arriving at the value of the condemned property.

341 P.2d at 1093.[12] In our view the evidence which suggests a demand for Vezey's gravel is no more speculative than was the demand for cinder cones in *Arnold I,* 341 P.2d at 1094–96. Vezey must be given the opportunity to substantiate his assertion that at the time of the taking his gravel was in prospective demand.[13] Upon

**11.** *See also City of Valdez,* 686 P.2d at 689 ("[I]t is settled law that if unrelated governmental actions enhance a tract's value ... the property's owner is entitled to additional compensation"); 4 J. Sackman, *Nichols' The Law of Eminent Domain,* § 12.3151[4] at 1213–1221, (rev. 3d ed. 1989) ("[I]t has been held that, where property is enhanced in value by reason of a public project and subsequently the property is taken for another unrelated project the owner is entitled to recover the enhanced value brought about by the first project"); *People ex rel. Dep't of Water Resources v. Andresen,* 193 Cal.App.3d 1144, 238 Cal.Rptr. 826 (1987) *rev. denied* (Cal. 1987); *Merced Irrigation District v. Woolstenhulme,* 4 Cal.3d 478, 93 Cal.Rptr. 833, 483 P.2d 1 (1971).

**12.** *See also* 4 J. Sackman *Nichols' The Law of Eminent Domain,* § 12.03 at 12–93 (rev. 3d ed. 1989) ("if the condemnor's need for the property is in competition with other similar demands for it, the condemnor's participation in the market may be considered in arriving at the value of the condemned property"). In adopting the reasoning of *Arnold I,* we reject the concerns expressed in *Arnold II* that consideration of the condemnor's demands would distort the market price, result in jury confusion, and lead to excessive condemnation verdicts. In our view the case at bar is an instance where exclusion of evidence of the condemnor's demand for gravel would likely produce an unfair award to the condemnee. We conclude that contrary to the *Arnold II* court, "the practical difficulty of drawing the line between the demands of the condemnor as a participant in the general market which establishes the normal market value and its demands which distort the price" outweighs the substantial danger in Alaska "that the exclusion of the condemnor's demand would produce an unfair award to the condemnee." *Arnold II,*

343 P.2d at 1114–15. Even the *Arnold II* court recognized that:

> Where the property taken consists of a natural resource such as a gravel pit or a cinder cone whose value is arrived at in part at least by considering the market for the materials which make it up, the condemnor may participate in the day to day demand for such materials as other purchasers do and thus influence the price without distorting it.

343 P.2d at 1114. *See also Ketchikan Cold Storage Company v. State,* 491 P.2d 143, 147 (Alaska 1971) (the trial court should allow into evidence "all the indicia of valuation commonly utilized in determining property values in a condemnation proceeding").

**13.** As the *Arnold I* court stated:

> In determining the present market value of property it is not improper to consider the uses to which the property can be put in the future if the prospect of such uses is more than a speculative forecast and if the probability of such future use would be reflected in the value which a present purchaser would attach to the property.
>
> .... It is not enough to show that prospective uses are within the realm of possibility; they must be shown to be reasonably probable in the immediate future.
>
> It is for the jury to decide whether the prospective use is reasonably probable, assuming of course, that there is evidence upon which to base such an inference.

341 P.2d at 1096–97 (citations omitted); *accord United States v. 320.0 Acres, More or Less,* 605 F.2d 762, 817–18 (5th Cir.1979) (footnotes omitted):

> [W]e align ourselves with these decisions and hold that once the landowner has produced

evidence of such demand, the court will value the condemned property in a context which includes both private and state demand for gravel on projects other than that which necessitated the taking.[14]

## IV. SHOULD THE STATE HAVE BEEN COMPELLED TO PROVIDE DISCOVERY RELATING TO THE DEMAND FOR GRAVEL ON PUBLIC PROJECTS?

The State argues in part that by the time Vezey moved to compel discovery, the superior court had already ruled that the State's needs for Vezey's gravel could not be considered. "Accordingly, there was no basis for requiring the State to answer questions regarding its past uses and future needs for gravel." Given our holding under Section III(B) of the opinion, and this jurisdiction's liberal approach to discovery in condemnation cases, we conclude that the superior court's denial of Vezey's motion to compel discovery should be reversed. *See Alaska Continental Development*, 630 P.2d at 986; *State v. Leach*, 516 P.2d 1383, 1384 (Alaska 1973). The evidence sought is discoverable pursuant to Civil Rule 26(b)(1).[15]

## V. IS THE STATE ENTITLED TO AN OFFSET OF BENEFITS FLOWING TO VEZEY FROM THE STATE'S VACATION OF THE OLD RIGHT-OF-WAY?

In its appeal, the State argues that property rights are taken only if total losses exceed total benefits, and that the

value accruing from the State's vacation of its pre-existing right-of-way should be considered part of the just compensation to which Vezey is entitled. Thus, the State contends that such value should be offset from the losses Vezey realizes, either as a result of the constitutional principle of just compensation, or pursuant to AS 09.55.-450(b), which states:

> The court may direct the payment of delinquent taxes and special assessments out of the amount determined to be just compensation, and make orders with respect to encumbrances, liens, rents, insurance, and other charges as are just and equitable.

Vezey argues that the vacation of the old right-of-way is not a special benefit which may be set off, and that even it it were, it may be set off only against remainder damages (and not taking damages) pursuant to subsection (3) of AS 09.55.310(a), which states:

> (a) The jury or master shall hear the allegations and evidence of persons interested and shall ascertain and assess the following:
>
> . . . .
>
> (3) separately, how much the portion not sought to be condemned ... will be benefited, if at all, by the construction of the improvements proposed by the plaintiff; and, if the benefit is equal to the damages assessed under (2) of this section, the owner of the parcel shall be allowed no damages except the value of

---

credible evidence that a potential use is reasonably practicable and reasonably probable within the near future, it is for the jury (or commission) to decide whether the property's suitability for this use enhances its market value, and, if so, by how much. To that extent and in that sense, the jury decides the highest and best use issue.

**14.** Resolution of the question whether Vezey's evidence of a market for the gravel meets "the requirement of reasonable certainty" necessary before it can be presented to the trier of fact must await completion of discovery upon remand to the superior court. *State v. Hammer*, 550 P.2d 820, 829 (Alaska 1976). Whether or not Vezey will be permitted to adduce evidence of unit price and quality of gravel is also dependent on completion of discovery and the

quality of the evidence Vezey produces on this issue. As noted at the outset, the superior court has ruled that:

> Before the unit price value of minerals or materials present may be introduced even as a factor to be considered by the trier of fact, the landowner must establish a probable market for the particular mineral material, sufficient to allow a reasonably accurate estimate of future demand to be made (as to time, quality and quantity of materials required).

**15.** The State's arguments that discovery could be excessively burdensome can be reasserted on remand. The State's contentions must be weighed in the context of Vezey's offer to search for the information himself, if the State will permit examination of its files.

the portion taken; but if the benefits are less than the damages so assessed, the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value[.]

We agree with Vezey that the applicable statute is AS 09.55.310 and not AS 09.55.-450. In *Dash v. State*, 491 P.2d 1069, 1072 n. 6 (Alaska 1971), we stated:

The rule in Alaska is that special benefits to the remainder can only be used to offset severance damages to the remainder. In the event that special benefits exceed severance damages, the landowner is still entitled to receive the full market value of the portion actually taken. AS 09.55.310.

We are of the further view that the benefit to Vezey is not a special benefit because it does not flow from the realization of the Nome–Council Highway, but rather from a State decision to vacate the old right-of-way from the State's taking.[16] We therefore hold that the superior court correctly denied the State's claimed offset resulting from its vacation of the old right-of-way.

## VI. IS THE STATE ENTITLED TO AN OFFSET OF COSTS AND FEES NOT INHERENTLY PART OF THE CONDEMNATION ACTION?

 In rejecting the request to an offset of $15,371.75 against Vezey's claimed costs and attorney's fees the superior court ruled as follows:[17]

This court further DENIES the State's request for set-off against such fees as such a set-off would be against the plain reading of Civil Rule 72(k), against case law in this State [citing *Scavenius* in a footnote] and in violation of Article 1,

Section 18, Constitution of Alaska, which provides: "Private property shall not be taken or damaged for public use without just compensation." This court finds awarding the State a "set-off" against defendant's justly incurred and necessary attorney fees herein, would deny Vezey just compensation for the taking of his property, at least under the facts of this case where through the condemnee's efforts [t]he right of way was narrowed and old right of way vacated so the practical effect was that no lands were taken, yet the condemnor paid about three (3) times that originally paid into court for the taking.

We uphold this ruling on the basis that the State's request is not authorized by Civil Rule 72(k), and on the further ground that the motions referred to as unnecessary by the State were in fact germane to Vezey's attempt to secure just compensation, and were not part of a separate claim on Vezey's behalf.[18]

## VII. DID THE SUPERIOR COURT ERR IN FAILING TO AWARD VEZEY FULL ATTORNEY'S FEES?

 "Full attorney's fees are the norm under Civil Rule 72(k), but those fees must be both reasonable and necessarily incurred to achieve just and adequate compensation for the owner." *Resource Investments v. State, Dep't of Transp. & Pub. Facilities*, 687 P.2d 280, 283 (Alaska 1984). When a trial court decides not to award full attorney's fees and costs it must state its reasons. *Id.* at 283.

In denying Vezey his claim for full attorney's fees, the superior court adequately explained its reasons for doing so. Basical-

---

**16.** In those jurisdictions where set-off is permitted, consideration may only be given to those benefits which are to accrue from the projected use on behalf of which the immediate condemnation is instituted. Benefits accruing from other improvements cannot be considered.

Similarly, serendipitous benefits which accrue but which are not due to the improvement per se, are not to be offset. (Footnote omitted.) 3 J. Sackman, *Nichols' The Law of Eminent Domain*, § 8.62 at 8–145, 8–147 (rev. 3d ed. 1989).

**17.** The State argued that it was entitled to this offset because it was forced to litigate certain

issues which were not inherently part of the condemnation action, namely Vezey's core drilling motions, Vezey's motion for allowance of ex-parte communication with a witness, and Vezey's relitigation of the protective order ruling.

**18.** These latter factors distinguish the case at bar from *City of Anchorage v. Scavenius*, 539 P.2d 1169 (Alaska 1975) and *Stewart v. State, Dep't of Transp. and Pub. Facilities*, 693 P.2d 827 (Alaska 1984).

ly, it rejected claimed attorney's fees incurred litigating certain motions and further held that Vezey's attorney's fees incurred in respect to gravel, gold drilling, and mineral values issues were excessive. Review of the record has persuaded us that the superior court did not abuse its discretion in denying Vezey his claimed full attorney's fees. Nevertheless, in light of our holdings under Section III(A) and (B) of this opinion, the superior court on remand is free to determine whether additional attorney's fees should be awarded to Vezey. *Resource Investments*, 687 P.2d at 283.

## VIII. DID THE SUPERIOR COURT ERR IN FAILING TO AWARD FULL COSTS INCURRED BY VEZEY AFTER FEBRUARY 1, 1984.

■ A. The superior court denied Vezey's claimed costs relating to food, entertainment, and miner's convention expenses. Any objection on Vezey's part to the superior court's denial of those costs is deemed waived since Vezey did not brief these issues. *See Resource Investments*, 687 P.2d at 282 n. 4.

■ The superior court further denied certain claimed expenses and costs of trips on the ground that they were not adequately documented. Review of the record fails to persuade us that Vezey in fact documented these requested costs in reasonable detail. Thus we conclude that the superior court did not err in disallowing these claimed costs.

The superior court also denied numerous claimed costs on the basis that the expenses were not reasonably necessary because they were incurred after the gravel issue had been decided, or after Vezey had received all benefits, i.e., after February 1, 1984. In view of the holdings under Section III(B) of the opinion, we remand this aspect of the superior court's costs determination for reconsideration.[19]

## IX. DID THE SUPERIOR COURT ERR IN FAILING TO AWARD VEZEY FULL COSTS FOR HIS OWN TIME AS A PROFESSIONAL CONSULTANT?

■ Vezey requested costs in the amount of $32,919 for 731.55 hours of his own time. The superior court approved a request Vezey made in 1984 for an award of costs for his own time in the amount of $3,818, at $45 per hour. The court denied Vezey's request for subsequent hours expended in 1985, 1986, and 1987, with the exception of 230 hours spent preparing his costs and fees request. The superior court approved this time, but at $25 rather than $45 per hour. The State contends that the superior court erred in awarding any costs to Vezey for his own time, and Vezey objects to the reduction from $45 to $25 per hour for the approved time in regard to 1985, 1986, and 1987.

We agree with the State that Vezey's time is not compensable. A party's own time is not normally compensable, and *Scavenius* indicates that this is the case in eminent domain proceedings. 539 P.2d at 1176 ("[H]e and his attorney must calculate whether his claim warrants the out-of-pocket expenses which must be incurred *as well as the time and effort* which must be devoted to the particular proceeding.") (emphasis added). We therefore hold that the superior court erred in awarding any costs to Vezey for his own time.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings not inconsistent with this opinion.

---

**19.** In regard to these cost claims, Vezey further contends that he was entitled to a hearing before the superior court ruled. We are not persuaded that the superior court abused its discretion in this regard. Civil Rule 77(e) provides that "[e]xcept on motions to dismiss; motions for summary judgment; motions for judgments on the pleadings; [and] other dispositive motions ..., oral argument shall be granted only in the discretion of the judge."