RESOURCE INVESTMENTS, a joint venture composed of Harold J. Moening, David G. Fritz, Bruce G. Purcell, Albert A. Kelly and Harvey P. Pittelko, Appellants,

v.

STATE of Alaska, DEPARTMENT OF TRANSPORTATION & PUBLIC FACILITIES, Appellee.

No. 7229.

Supreme Court of Alaska.

July 27, 1984.

Mary K. Hughes and Steven S. Tervooren, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellants.

Bruce Tennant, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, and Eugene F. Wiles and Marc D. Bond, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This appeal follows the trial of an eminent domain action in which the State acquired a thirty acre parcel in Anchorage owned by Resource Investments. The land is situated next to the Old Seward Highway. Prior to trial the superior court granted the State's motion for summary judgment, holding that the State already had a 100 foot wide right-of-way along Old Seward Highway. This removed approximately two acres from the parcel. Resource Investments appeals this decision, contending that the State only had a thirty-three foot right-of-way.

Following a jury trial on the issue of just compensation, the superior court entered judgment on the verdict for $5,061,040, an amount more than 10% larger than the total amount deposited by the State, thus entitling Resource Investments to an award of attorney's fees under Civil Rule 72(k). The court awarded Resource Investments $115,000 for attorney's fees and $76,877.13 for costs. Resource Investments has appealed these amounts claiming that the superior court erred in not awarding actual costs of $149,918.49 and attorney's fees of $357,720.14.

## I. THE RIGHT–OF–WAY ISSUE

The property in question was acquired by Resource Investments in 1966 from John Schandelmeier, the original patentee. Schandelmeier filed his application for homestead entry on March 27, 1946 and continuously lived on the property thereafter. He received the patent to his land on June 6, 1951 from the Bureau of Land Management of the United States Department of the Interior. On August 10, 1949 the Secretary of the Interior issued Public Land Order (PLO) 601, which, among other things, withdrew for highway purposes 100 feet on each side of the center line of the Old Seward Highway. The withdrawal was, however, subject to "valid existing rights." The question presented is whether Schandelmeier's pre-patent homestead entry was a valid existing right under the terms of PLO 601. If it was then PLO 601 did not effect a withdrawal from the property.

The landowner's situation in the present case is virtually identical to that of Hansen Associates in *State v. Alaska Land Title Association*, 667 P.2d 714 (Alaska 1983) (*ALTA*). There the original patentee had made his homestead entry prior to the issuance of PLO 601 but did not receive his patent until after PLO 601 became effective. We rejected the State's contention that it owned a 100 foot right-of-way, holding that a homestead entry was a "valid existing right" that was expressly excepted from withdrawal by PLO 601's own terms. *Id.* at 724. The State asks us to reconsider this decision.

In *ALTA* all parties, including the State, agreed that PLO 601 was based on Execu-

tive Order 9337 [1] which in turn was based on the Pickett Act, 43 U.S.C. § 141 *et seq. Id.* at 724. In the present case, the State agrees that PLO 601 is based on Executive Order 9337, but argues that the Executive Order is based in part on the Pickett Act and in part on the inherent authority of the President of the United States to withdraw public lands for public purposes. The significance of this distinction is that while the Pickett Act withdrawals may not include lands embraced in any lawful homestead entry, no such limitation applies to withdrawals made under the inherent authority of the President.

Although the State may well be correct that Executive Order 9337 is based on the President's inherent authority as well as on the Pickett Act, that fact is not determinative of the meaning of the phrase "valid existing rights" in PLO 601. In *Stockley v. United States,* 260 U.S. 532, 544, 43 S.Ct. 186, 189, 67 L.Ed. 390, 395 (1923), the United States Supreme Court recognized that an unperfected homestead entry was within an excepted category of "existing valid claims" excluded from the terms of a government withdrawal order. The court stated:

> [T]here is excepted from the operation of the order "existing valid claims." Obviously this means something less than a vested right, such as would follow from a complete final entry, since such a right

would require no exception to insure its preservation. The purpose of the exception, evidently, was to save from the operation of the order claims which had been lawfully initiated, and which, upon full compliance with the Land Laws, would ripen into a title.

For the same reason, it seems apparent that the Secretary of the Interior intended to except pre-patent homestead entries from the operation of PLO 601.

■ We conclude that Schandelmeier's entry was a valid existing right, therefore no part of his homestead was affected by PLO 601. Accordingly, we REVERSE the trial court's grant of summary judgment which held that the State owned a 100 foot right-of-way along the Old Seward Highway and REMAND for a determination of just compensation as to the sixty-seven foot strip of land extending beyond the thirty-three foot right-of-way conceded by Resource Investments.

## II. COSTS AND ATTORNEY'S FEES

■ The award of costs and attorney's fees in eminent domain cases is governed by Civil Rule 72(k).[2] Resource Investments is entitled to an award of costs and attorney's fees under Rule 72(k)(3) because the award it obtained was more than ten percent larger than the amount deposited

---

**1.** Executive Order 9337 provides in relevant part:

AUTHORIZING THE SECRETARY OF THE INTERIOR TO WITHDRAW AND RESERVE LANDS OF THE PUBLIC DOMAIN AND OTHER LANDS OWNED BY OR CONTROLLED BY THE UNITED STATES.

By virtue of the authority vested in me by the Act of June 25, 1910, ch. 421, 36 Stat. 847 [Pickett Act], *and as President of the United States,* it is ordered as follows:

Sec. 1. The Secretary of the Interior is hereby authorized to withdraw or reserve lands of the public domain and other lands owned or controlled by the United States *to the same extent that such lands might be withdrawn or reserved by the President,* and also, to the same extent, to modify or revoke withdrawals or reservations of such lands....

(Emphasis added).

**2.** Rule 72(k) provides:

Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:

(1) the taking of the property is denied; or

(2) the plaintiff appeals from the allowance of the master and the defendant does not appeal; or

(3) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken by the defendant; or

(4) the action was dismissed under the provisions of paragraph (i) of this rule; or

(5) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.

Attorney's fees allowed under this paragraph shall be commensurate with the time committed by the attorney to the case throughout the entire proceedings.

by the State.[3] Full attorney's fees are the norm under Civil Rule 72(k), but those fees must be both reasonable and necessarily incurred to achieve just and adequate compensation for the owner. *Triangle, Inc. v. State,* 632 P.2d 965, 970 (Alaska 1981). We will not disturb a trial court's decision to award less than the property owner's actual costs or fees unless it appears that the court's decision is an abuse of discretion. *Badger Construction v. State,* 628 P.2d 921, 924 (Alaska 1981). When a trial court decides not to award full attorney's fees and costs it must state its reasons. *Triangle,* 632 P.2d at 970.

### A. Attorney's Fees.

█ In the present case, Resource Investments claimed actual attorney's fees of $357,720.14. The superior court determined that $115,000.00 were reasonable and necessarily incurred. In making this determination the trial judge issued a five page written order which explained why he did not accept the full fees requested. The full text of the order is set forth in the Appendix. The most important of the trial judge's reasons, as we view his order, are as follows: (1) there was an unnecessary utilization of two and sometimes three attorneys at trial and pre-trial proceedings at which the presence of one attorney would have sufficed; (2) the time spent by the property owner's attorneys in preparing for trial was excessive in view of the straightforward nature of the issues to be tried; (3) the time spent in resolving the question concerning the taking of the easement was excessive and not reasonably related to the complexity of the issue; (4) the claim of $17,887.65 in attorney's fees for preparing motions for costs and attorney's fees was not only excessive in itself but suggested excessiveness as to all of the fees requested; and (5) attorney Richards' billings for travel time to and from Alaska

were unreasonable and his hourly rate of $175.00 was also unreasonable.

We regard these reasons as an adequate explanation for the court's determination and we are unable to say that the determination was an abuse of discretion. We suggest, however, that the trial court review its award on remand in connection with the third reason listed above, namely that excessive time was spent concerning the question of the taking of the easement. In light of the determination on the merits on that question reflected in today's opinion, the trial court may find that additional fees are warranted.

### B. Costs

Resource Investments claimed costs of $149,908.49. The clerk taxed costs of $19,846.00. The clerk did not consider costs for expert witnesses, but deferred to the court concerning that subject. The court allowed costs of $76,877.13 including the costs taxed by the clerk.

On appeal Resource Investments claims that the court erred in failing to award costs in thirteen categories: [4]

(1) Airfares:

| | | | |
|---|---|---|---|
| | 6/18/82 | Tervooren air fare for Tollefson deposition | $ 426.00 |
| | 7/21–30/82 | Richards air fare for trial | 714.94 |
| | | Subtotal | $1,140.94 |

(2) Actual expenses for attending depositions and trial: The clerk allowed $80.00 per diem in lieu of actual expense amounting to: $3,308.75 ... 1,509.78

Subtotal $1,798.97

(3) Meeting expenses, travel of attorneys, clients and witnesses to attend periodic meetings. Appellants do not state in their briefs the total amount of this claim but re-

---

**3.** The jury awarded $5,061,040.00. The State had deposited $3,510,000.00.

**4.** Resource Investments claims that the court erred in failing to award its actual costs of $149,908.49. It then discusses in general fash-

ion numerous costs that were reduced or not mentioned by the superior court. We have itemized its claim into thirteen categories for ease of discussion. Cost items not discussed in its brief were deemed abandoned.

fer us to Appendix A of their brief which contains eight items totaling: $11,182.14

Some of these items are plainly duplications of items in other categories. We exclude the expert expenses for 9/2–3/80 and 8/21–25/80 and the attorney expenses relating to 6/17–18/82, 6/18/82 and 7/21–30/82 as those categories are substantially duplicated by other categories. The excluded categories total: 3,234.60

Thus, for purposes of determining what the appellants claim is, we consider this category to amount to a claim of $ 7,947.54

| (4) | Actual copying costs | $ 4,277.40 |
| | Amount allowed by clerk | 3,638.82 |
| | Amount of claim | $ 638.58 |
| (5) | Lexis search costs | $ 44.00 |
| (6) | Telecopy, mileage and parking fees: | $ 108.75 |
| (7) | DOWL Engineering surveying and drafting work to verify the size of the takings | |
| | 3/13/81 | $ 1,528.75 |
| | 5/26/81 | 385.26 |
| | Subtotal | $ 1,914.01 |
| (8) | Soils drilling and testing: | $ 2,345.00 |
| (9) | Appraisal consultations | |
| | Norene Realty | $ 75.00 |
| | Alaska Valuation Services | 960.00 |
| | Subtotal | $ 1,035.00 |
| (10) | Disallowance of out of $7,050.00 claimed in costs attributable to Dr. Twelker—soils expert | $ 3,020.00 |
| (11) | Disallowance of costs with respect to Clifford Moles—architect | $10,795.50 |
| (12) | Reduction in fees and costs of John Day—appraiser. | |
| | Claimed: | $21,660.63 |
| | Allowed: | 14,850.63 |
| | Amount claimed on appeal | $ 6,810.00 |
| (13) | Ronald Hoefer—appraiser. | |
| | Total claimed: | $61,008.17 |
| | Allowed: | 35,782.92 |
| | Balance claimed on appeal | $25,225.25 |

TOTAL COSTS CLAIMED ON APPEAL $62,823.54

The court gave no reason for disallowing items 1, 3, and 5 through 9 and for reducing items 2 and 4. As to these items we remand so that the court may express its reasons for its action.[5]

 The court failed to allow costs for the June 16, 1982 trip to Anchorage of Resource Investments' soils expert, Dr. Twelker. This trip was for the purpose of on-site field work and appears to have been reasonably necessary. On remand, costs should be allowed for this trip.

The court disallowed all costs of Clifford Moles, the defendants' expert architect, stating he did not testify at trial. The court subsequently corrected this factual misstatement, but failed to award any of Mr. Moles' costs to defendants. This omission must be corrected as Mr. Moles' testimony was found by the court to have been necessary.

The trial court disallowed a trip to Anchorage of Resource Investments' appraiser, John Day, begun on November 9, 1981. This trip was taken for appraisal field work and appears to have been reasonably necessary. On remand, the court should award costs for this trip.

The trial court disallowed eleven of the fourteen trips taken by Resource Investments' appraiser Roland Hoefer. The court did not abuse its discretion in concluding that not all of the trips were necessary. However, we believe that the court should more fully explain why the following trips taken by Mr. Hoefer should not be allowed: 9/2/80, trip to Anchorage to inspect property; 4/10/81, trip to Anchorage to attend Master's hearing; 3/9/82, trip to Anchorage to continue deposition; and 3/26/82, trip to Anchorage to continue deposition. The court is authorized to award costs for these trips if it determines on remand that the trips meet the reasonable and necessary standard.

REVERSED and REMANDED for action consistent with this opinion.

---

**5.** The court is also authorized to award any of these items if it finds that they were improperly omitted or reduced.

APPENDIX

IN THE SUPERIOR COURT FOR THE
STATE OF ALASKA THIRD
JUDICIAL DISTRICT

STATE OF ALASKA, DEPARTMENT OF
TRANSPORTATION & PUBLIC
FACILITIES, Plaintiff,

vs.

29.513 Acres, more or less; RESOURCE
INVESTMENTS, a joint venture, et
al., Defendants.

Case No. 3AN–80–7419 Civil Minnesota
Drive Extension Project No. OF–031–
2(47) Parcel Nos. A–104 and A–104B

ORDER (ATTORNEYS' FEES)

The defendant landowner moved for attorneys' fees in the amount of $339,832.25 through August 31, 1982. Since that date, the landowner has requested additional attorneys' fees for work apparently rendered by Hughes, Thorsness, Gantz, Powell & Brundin in the amount of $17,887.65. The total requested through January 5, 1982, is presently $357,720.14.

Of the total, defendant asserts a breakdown as follows:

| | |
|---|---|
| Richard Richards (non-resident counsel who participated in trial) | $155,629.00 |
| Mary K. Hughes, Steve Tervooren, and other attorneys in the firm | 202,091.14 |

The landowner asserts that the amounts requested were reasonably and necessarily incurred to obtain just compensation for the landowner.

Even though the sums involved in the trial were large, this case involved a relatively simple question of just compensation for a taking of approximately 40 acres at the intersection of the Old and New Seward Highways and O'Malley Road. Initially, there was a partial taking by the state which matured into a total taking substantially reducing the complexity of the litigation.[1]

According to the landowner, Mr. Richards was associated for the purpose of his trial expertise in the field. His rate charged to the landowner was $175 per hour, while the rates charged by Anchorage counsel were approximately one-half the hourly rate charged by Mr. Richards.

Counsel for landowner argues that they are entitled to actual attorneys' fees if the court concludes that the professional services were necessarily incurred to achieve just compensation by the landowner. The State of Alaska argues that the fees charged were excessive and unreasonable and not necessarily incurred to achieve just compensation.

This court has carefully reviewed the itemized billings from respective counsel to the landowners, together with the affidavits in support of the motion for attorneys' fees. In addition, the court has given due regard to the length of this trial (approximately two weeks), the pretrial motions and work which necessarily accompanied them, the overall complexity or lack of complexity of the issues involved, the amount in controversy, the time spent in court and during pretrial hearings and conferences, and is otherwise fully informed of the circumstances of this case.

During the course of the trial, Mr. Richards and Ms. Hughes were present almost all of the time. Ms. Hughes participated in the examination and cross-examination of non-expert witnesses for the most part, while Mr. Richards participated in the examination and cross-examination of expert witnesses. Mr. Tervooren, additional counsel for the landowner, was present a portion of the time in court, sitting in the back of the room, but took no active role in the trial itself. Pretrial matters generally involved both Ms. Hughes and Mr. Tervooren. Both counsel appeared for practically all hearings and pretrial conferences. On the other hand, Mr. Richards did not appear before the court until immediately before trial.

1. A full taking made it unnecessary for landowner to fully prepare for and prove damages to the remainder, which, according to landowner's counsel, reduced the complexity of the case significantly.

The landowner contends that it is entitled to full compensation for attorneys' fees, asserting that all fees were necessarily incurred to achieve just compensation. The court agrees that the landowner is entitled to just compensation, including attorneys' fees, provided such attorneys' fees are reasonable, given all the circumstances of the case. To hold otherwise would essentially be giving the landowner a blank check which would be contrary to law and public policy.

The court finds that to award the fees requested by landowner would be unreasonable under the circumstances. The charges by attorney Richards were not reasonably necessary to achieve just compensation. Mr. Richards' statements show significant charges for his professional time in route to and from Alaska. His hourly charges are significantly higher than what the court believes to be a reasonable rate charged by skilled Anchorage, Alaska lawyers. The case did not involve any unusual complexity nor did it take a protracted length of time to try. The issues were straight forward, and while the court recognizes a need for preparation, the time spent in preparing for this trial appears excessive and not reasonably related to the issues presented.

Time spent in resolving the question of the taking of a road easement which was finally resolved by the trial court against the landowner appears grossly excessive and not reasonably related to the complexity of the issue which had been previously argued before this court on at least two other occasions and was pending on appeal at the time this court resolved the issue in the instant case.

Similarly, it was not reasonably necessary to secure just compensation for two and sometimes three attorneys to be present on behalf of the landowner at most all stages of the litigation.

The landowner argues that the request for fees is reasonable as it is less than what C.R. 82(a)(1) would permit. The landowner argues that a Rule 82 fee calculation would lead to a presumed partial fee reimbursement in excess of $500,000.00, thus justifying at least the $357,000.00 requested.

This argument assumes, however, that the full amount awarded by the jury was in dispute. In reality, if a Rule 82 calculation was made, it would have been made on not more than the difference between what had been deposited and what was eventually achieved through a jury verdict. The amount deposited was not disputed, had been already paid to the landowner, and would not have been utilized as a basis for calculation of Rule 82 fees by this court. In fact, a good argument can be made to limit the Rule 82 calculation to the difference between the amount of the appraisal by the state and the verdict finally arrived at by the jury. In either case, the attorneys' fees under C.R. 82 would be somewhere between $80,000.00 and $150,000.00.[2]

Finally, the court has reviewed the filings since August 31, 1982, in support of the landowner's claim to an additional $17,887.65 in attorneys' fees. The claim is somewhat unsupported but it is reasonably apparent that these fees were incurred in the landowner's attempt to recover their costs and attorneys' fees. A certain pyramiding of attorneys' fees is reasonably necessary to protect the landowner's rights in obtaining just compensation. However, the amount claimed suggests another "blank check" approach to these fees as was done in the application for fees incurred prior to August 31, 1982.

Provided that the records were maintained in an orderly fashion (which I would expect to have been accomplished), application for costs and attorneys' fees would not appear to involve any complexity or significant time. A compilation of the statements for services rendered together with an itemization of the costs incurred, with a short brief, would appear to be all that was necessary to present the landowner's claims. In addition, an appearance before the clerk at the cost bill hearing and an appearance before the court on the applica-

---

**2.** C.R. 82 is not the controlling rule. It is used simply as an analogy and was not considered by the court in its determination of attorneys' fees in this case.

tion for costs and attorneys' fees was required.

This court finds that almost $18,000.00 is not reasonable and is unnecessary to the presentation of the landowner's application for costs and attorneys' fees.

Having given consideration to the factors hereinabove, this court awards the sum of $110,000.00 as attorneys' fees which were reasonably and necessarily incurred to acquire just compensation through August 31, 1982. Additionally, this court finds that the sum of $5,000.00 was reasonably and necessarily incurred by the landowner to process its application for costs and attorneys' fees from August 31, 1982 through the present date. The sum of $115,000.00 shall be inserted as attorneys' fees awarded to the landowner in the approved form of judgment.

DATED at Anchorage, Alaska, this 25 day of January, 1983.

/s/ Karl Johnstone
Karl S. Johnstone
Superior Court Judge