MAASSEN, Justice.
*935 I. INTRODUCTION
The Department of Transportation and Public Facilities (DOT or the State) condemned a strip of property along the Parks Highway. DOT filed a declaration of taking, allowing it to take title immediately, and deposited approximately $ 15,000 in court as estimated compensation for the taking. The landowner challenged DOT's estimate and was eventually awarded approximately $ 24,000, as well as attorney's fees and costs. Pursuant to AS 09.55.440, the superior court awarded prejudgment interest to the landowner at the rate of 10.5% on the difference between the amount of DOT's initial deposit and the amount the property was ultimately determined to be worth.
The landowner appeals, arguing that the prejudgment interest should have been calculated on the difference between the deposit and his entire judgment, including significant amounts for attorney's fees and appraisal costs. We conclude, however, that the landowner's argument is not supported by the statutory language, legislative history, or policy. We also reject the landowner's arguments that the superior court applied the wrong postjudgment interest rate and abused its discretion by denying discovery of the State's attorneys' billing records. Finally, we conclude that the superior court must state its reasons for excluding any attorney time from its attorney's fees award, and we therefore vacate the attorney's fees award and remand for reconsideration on this limited issue.
II. FACTS AND PROCEEDINGS
A. Facts
The property at the center of this case is approximately 6.727 acres near Wasilla, owned by Robert Keeton III. Bounded by Jacobsen Lake on the south, the property rises to the Parks Highway to the north. The area nearest the lake is wetlands. Between the wetlands and the property's upland portion is an area filled with woodchips, where there used to be a mill. The property includes a cabin that has been turned into a duplex, an automobile repair shop, and a used car dealership operating out of a modular building.
In 2014 DOT began a project to widen the Parks Highway from Mileposts 44.5 to 48.3. As part of the project it sought to condemn a portion of Keeton's property, referred to by DOT as "Parcel 77" and described as "a narrow strip along the current Parks Highway [ ], approximately 15 feet wide and 420 feet long, for a total of approximately 6,301 square feet." According to DOT, Parcel 77 was "necessary for this project in order to relocate utilities and to accommodate right-of-way maintenance needs." The condemnation reduced Keeton's property from approximately 6.727 acres to 6.582 acres.
To assist with its right-of-way acquisitions, DOT retained a consulting firm, which in turn subcontracted with an appraisal firm. The appraiser who did the work on Parcel 77 was Steve Carlson. Before starting the appraisal, Carlson estimated that the value of Parcel 77 would be less than $ 25,000, and he thus prepared a waiver valuation, an "abbreviated form" of an appraisal. The waiver valuation valued Parcel 77 at $ 14,800. Carlson also found that the condemnation caused no damage to the remaining property.
*936 B. Proceedings
The parties were unable to agree on the amount of compensation due Keeton for the taking. On April 30, 2014, DOT filed a complaint for condemnation and a declaration of taking. DOT offered $ 14,800 in just compensation and deposited $ 14,905.98 with the superior court, including $ 105.98 as estimated pro-rated property taxes. In his answer Keeton disputed DOT's valuation, sought "[a]n award of just compensation for [DOT's] taking of and damage to his private property, including but not limited to, a fair valuation of and payment for the private property taken by [DOT]," and asked that he be awarded his costs and attorney's fees.
The superior court appointed a master to hear the matter. In preparation for the hearing, Carlson did a full narrative appraisal of Keeton's property and determined that the value of Parcel 77 was $ 18,300. In compliance with Carlson's revised estimation, DOT added an additional $ 3,500 to the court deposit.
Keeton also retained a commercial appraiser, Per Bjorn-Roli, to perform an appraisal on his behalf. Bjorn-Roli's estimates of value were significantly higher than those proposed by DOT: $ 35,956 for the value of the property taken and $ 15,580 for damage to the remainder of Keeton's property. Keeton also argued that the taking made it more costly for him to install a septic tank on his property, and he valued his total loss at $ 102,456.
The master's hearing was held in August and September 2016. The master found that the condemned property was worth $ 24,740, and neither party appealed this determination. The amount exceeded DOT's initial deposit by approximately $ 10,000 and its supplemented deposit, following Carlson's second appraisal, by $ 6,440. Keeton moved for entry of final judgment and an award of attorney's fees and costs. In addition to the property's value he sought $ 44,553.12 in attorney's fees, $ 30,444 in appraiser fees, $ 1,823.35 in other costs, and $ 25,825.64 in prejudgment interest. A statute provides for prejudgment interest at the rate of 10.5% "on the amount finally awarded that exceeds the amount paid into court under the declaration of taking";[1] Keeton argued that his fees and costs should be added to the property's ascertained value to determine "the amount finally awarded" for purposes of contrast with DOT's deposit.
DOT partially opposed the request, asking to see Keeton's lawyer's billing records to determine their reasonableness and arguing that prejudgment interest could not be applied to an award of attorney's fees and costs. Keeton, in turn, sought the billing records of DOT's attorneys, but DOT successfully moved to quash the request. After inspecting Keeton's attorney's records, DOT decided not to object to his attorney's fees and costs incurred through the May 2017 oral argument on the prejudgment interest issue.
The superior court awarded a final judgment of just compensation for $ 24,740 based on the master's recommendation and calculated prejudgment interest on the amount by which it exceeded DOT's deposits. The court also awarded Keeton $ 47,453.12 in attorney's fees and $ 32,276.50 in costs, with postjudgment interest at the rate of 4.25%.
Keeton appeals from the superior court's refusal to include his attorney's fees and costs in "the amount finally awarded" for purposes of the award of prejudgment interest under AS 09.55.440(a). He also appeals the court's award of postjudgment interest at 4.25%; its decision to quash his subpoena for DOT's attorneys' billing records; and the court's decision to exclude certain activities from the attorney's fees award.
III. STANDARD OF REVIEW
Whether prejudgment interest as defined in AS 09.05.440(a) applies to an award of attorney's fees and costs in a condemnation action presents a legal question, which we review de novo.[2] "We apply our independent judgment to questions of 'statutory interpretation requiring the application and analysis of various canons of statutory construction.' "[3] We review for abuse of discretion *937 a superior court's decisions to quash a subpoena[4] and to deny certain requested attorney's fees and costs.[5]
IV. DISCUSSION
A. The Superior Court Did Not Err By Denying Prejudgment Interest On Attorney's Fees And Costs Under AS 09.55.440.
Alaska Statute 09.55.440(a) provides for prejudgment interest at 10.5% on only a portion of a condemnation award: the amount by which "the amount finally awarded ... exceeds the amount paid into court under the declaration of taking." Keeton's primary argument on appeal is that "the amount finally awarded" should include his awards of attorney's fees and costs, not just the compensation reflecting the value of the condemned property; under this argument the gap between the amount deposited and the amount awarded is $ 61,429.12[6] rather than $ 6,440. Keeton argues that his interpretation of the statute is plausible and that the statute must therefore be interpreted in his favor under the principle that "a grant of power of eminent domain is to be strictly construed against the condemning party and in favor of the property owner."[7]
We have strictly construed against the State its power to condemn,[8] which is not at issue in this case. In any event, the plain language of AS 09.55.440(a) is not ambiguous, and therefore strict construction of it would not help Keeton's position. "We construe statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[9] Applying these usual rules of statutory construction, we conclude that the superior court did not err by excluding attorney's fees and costs from its award of prejudgment interest under AS 09.55.440(a).
1. The plain language of the eminent domain statutes does not contemplate that "compensation" as used in those statutes includes attorney's fees and costs.
When the State seeks to exercise its power of eminent domain over private property, "it may file a declaration of taking with the complaint or at any time after the filing of the complaint, but before judgment."[10] The declaration of taking must state the authority under which the power is being exercised, the public use intended for the property, a description of the property and the interests in it, a statement of necessity, and-as most relevant here-"a statement of the amount of money estimated by the plaintiff to be just compensation for the property or the interest in it."[11] Title to the property vests in the *938 State once it has filed "the declaration of taking and the deposit with the court of the amount of the estimated compensation stated in the declaration...."[12] The deposit tolls the running of interest on the sum deposited; by use of this procedural device, the State may "minimize the risk of an interest assessment (and avoid the expenses of litigation) by making a reasonable offer which the property owner is likely to accept prior to the institution of legal proceedings."[13]
When the State files the declaration of taking and the deposit, "the right to just compensation for [the property] vests in the persons entitled to it,"[14] and the court may thereafter order that the deposit be distributed "at any time."[15] Assuming the landowner does not accept the amount deposited as just compensation, "[t]he compensation shall be ascertained and awarded in the proceeding and established by judgment."[16] The next sentence of AS 09.55.440(a) is at the heart of this appeal: "The judgment must include interest at the rate of 10.5 percent a year on the amount finally awarded that exceeds the amount paid into court under the declaration of taking. The interest runs from the date title vests to the date of payment of the judgment."[17] Because prejudgment interest applies only to the excess of "the amount finally awarded" over "the amount paid into court under the declaration of taking," including attorney's fees and costs in "the amount finally awarded" may-as in this case-significantly increase the possible excess to which prejudgment interest will apply.
We conclude, however, that the plain language of the statute, read in context, does not support this interpretation. "When a statute ... is part of a larger framework or regulatory scheme, even a seemingly unambiguous statute must be interpreted in light of the other portions of the regulatory whole."[18] Alaska Statute 09.55.440(a) begins by reference to "the filing of the declaration of taking and the deposit with the court of the amount of the estimated compensation stated in the declaration "; the next sentence of subsection (a) refers again to "the compensation," which "shall be ascertained and awarded in the proceeding and established by judgment"; and the third sentence of the subsection picks up the term "award" and contrasts it with the "estimated compensation" referred to in the first sentence: interest shall be included "on the amount finally awarded that exceeds the amount paid into court under the declaration of taking ." (Emphasis added.) In this procedural sequence, "the estimated compensation," through ascertainment and award, becomes "the compensation," which is "established by judgment" and contrasted with the State's initial estimate of what it was likely to be.
"Compensation" is explained in other statutes in the same chapter. Alaska Statute 09.55.310, addressing the hearing process, provides that "[t]he jury or master" shall "ascertain and assess ... the value of the property sought to be condemned , and all improvements on it pertaining to the realty, and of each separate estate or interest in it" (emphasis added), as well as any collateral damage or benefit to portions of the landowners' property that have not been condemned. Alaska Statute 09.55.330, entitled "Compensation and damages," reads in pertinent part:
For the purpose of assessing compensation and damages, the right to them accrues at the date of issuance of the summons, and its actual value at that date is the measure of compensation of the property to be actually taken , and the basis of damages to property not actually taken but injuriously affected in the cases where the damages are allowed.... Improvements put upon the property after the date of the service of summons may not be included in the assessment of compensation or damages.
*939 (Emphasis added.) And finally, AS 09.55.430, as noted above, describes the necessary contents of a declaration of taking to include "a statement of the amount of money estimated by the plaintiff to be just compensation for the property or the interest in it ." (Emphasis added.)
Reading these statutes together and harmonizing their terminology leads to these conclusions: (1) "compensation" means "the actual value ... of the property to be actually taken" (and damages for injury to other property "where the damages are allowed");[19] (2) it is this amount that must be stated in the declaration of taking;[20] and (3) it is this amount that is deposited with the court and is later contrasted with the "amount finally awarded" to determine the amount of any excess.[21] All these statutes defining compensation and directly addressing its deposit and award focus on the value of the property or damage to other property; none of them mentions attorney's fees and costs. We conclude that the "amount finally awarded" means "compensation," which in this statutory context means the value of the property plus incidental damages but does not include attorney's fees and costs.
We acknowledge that "the just compensation principle of the Alaska Constitution requires full indemnification of the owner for property taken or damaged," which in turn generally "require[s] payment to a condemnee of necessary appraiser's and attorney's fees, and of interest from the date of taking to the date of payment."[22] "Just compensation" is the constitutional requirement; "compensation" is the statutory term at issue, which in the context of the deposit and award has a narrower definition.[23] The statutes, and Alaska Civil Rule 72 (discussed below), ensure that a landowner is awarded the attorney's fees, costs, and interest necessary to satisfy the constitutional requirement of just compensation.
2. Alaska Civil Rule 72 reflects the understanding that the condemnor's deposit of the amount of estimated compensation does not include attorney's fees and costs.
Our civil rules reflect the same understanding of the eminent domain statutes: The condemnor is not required to include attorney's fees and costs in its deposit of the amount of estimated compensation. Alaska Civil Rule 72(j) provides that "[t]he plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain, and may make such deposit even when not required to do so by law." Rule 72(k) addresses costs and attorney's fees. It provides in part: "Costs and attorney's fees incurred by a defendant must be assessed against the plaintiff if ... the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority...." The rule's requirement that attorney's fees and costs be assessed if there is a 10% excess of amount awarded over amount deposited plainly assumes that these two amounts do not already include attorney's fees and costs. Other provisions of Rule 72(k), identifying additional circumstances in which the court is required to award costs and attorney's fees, likewise assume that these items are not already included in the condemnor's deposit of estimated compensation.[24]
Keeton argues that Rule 72(j) supports his interpretation of the eminent domain statutes because it provides, in part, that "[t]he notice of deposit must disclose the extent to which *940 the deposit represents principal, interest, costs and fees, if any." We agree with DOT, however, that the meager history of this sentence in the rule, added in 1968, shows only an intent to address "secondary deposits," that is, situations when the condemnor increases the deposit after the landowner has withdrawn some or all of the amount originally deposited, and the court has to determine whether the "10 percent rule set forth in Rule 72(k)(3)" has been satisfied by comparing the estimated compensation to the award.[25]
3. The legislative history of AS 09.55.440 does not support including attorney's fees and costs in the "amount finally awarded" for purposes of prejudgment interest.
The Alaska territorial predecessor of AS 09.55.440, enacted in 1953,[26] followed nearly word-for-word an existing federal law governing eminent domain proceedings.[27] Federal decisions construing federal laws are persuasive authority when we interpret their state law counterparts.[28]
Federal law allowed the government to file a declaration of taking with "[a] statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken."[29] It also allowed for 6% prejudgment interest on any amount awarded above what the condemning authority had deposited.[30] But until 1970, federal law did not authorize awards of attorney's fees or costs in eminent domain proceedings.[31] Prejudgment interest on such awards thus could not have been contemplated when the territorial predecessor of AS 09.55.440 went into effect in 1953.
The Alaska Legislature amended AS 09.55.440 in 1962 and again in 1997.[32] The *941 1962 amendment revised the reference to prejudgment interest: instead of applying to the "value of the property," it now applied to the "amount finally awarded which exceeds the amount paid into court."[33] DOT contends that this change, while "less precise in specifying the amount to which prejudgment interest applies, ... was not meant to be substantive," and the legislative history supports this contention.[34]
In 1997 AS 09.55.440 was amended to increase the amount of prejudgment interest from 6% to 10.5%.[35] This change followed our decision in City of Valdez v. 18.99 Acres, More or Less , that using a 6% interest rate for proceedings under a declaration of taking violated the Alaska Constitution's equal protection clause.[36] We concluded that there was no rational basis for different interest rates in such proceedings and those resolved by a judgment of condemnation, which were subject to the 10.5% interest rate of AS 09.30.070.[37] Again, the legislative history of the 1997 change makes no mention of attorney's fees and costs.[38]
We conclude that the legislative history does not support Keeton's broad reading of "the amount finally awarded," and in fact the history of the statute's derivation from federal and territorial statutes militates directly against it.
4. The purpose of AS 09.55.440 would not be furthered by including attorney's fees and costs in the "amount finally awarded" for purposes of prejudgment interest.
Reasons of policy and legislative purpose also militate against Keeton's proposed interpretation of AS 09.55.440. Most obviously, prejudgment interest is intended to be compensatory; it "is necessary to compensate plaintiff for the loss of the use of the money from the date of injury until the date of judgment."[39] Landowners do not lose the use of the money they spend on attorney's fees until it is spent; as in this case, the bulk of that money is likely to be spent long after the date of taking, during the course of the litigation. Applying prejudgment interest to costs not yet incurred does not make landowners whole but rather gives them a windfall at public expense.
Keeton argues, however, that encouraging the State to include attorney's fees and costs in the estimated compensation deposited with the court will help level the playing field. He asserts that he had "great difficulty trying to find a commercial appraiser to work with him because they did not want to get crosswise with the State and lose out on this lucrative work for the State," and the State thus has a "monopoly on the 'handful' of ... commercial appraisers in Alaska's 'small industry' qualified to do valuation work in eminent domain cases." He argues that this "monopoly" can *942 be broken only if the State is required to include the landowner's costs in the estimated compensation, making it easier for individuals to hire appraisers and attorneys.
We see nothing in the statute's language or history to indicate that the legislature shared Keeton's concern and intended to ameliorate it. Our rules already ensure that the landowner in most cases will recover the attorney's fees and costs reasonably expended in contesting an eminent domain proceeding.[40] A change in the law to require not simply compensation after the fact, but guaranteed equal access to attorneys and appraisers at the outset of condemnation proceedings, is for the legislature to consider, not the courts.
In sum, considering the statutory language and context, the legislative history, and the policy arguments advanced by Keeton and the State, we conclude that, for purposes of awards of prejudgment interest under AS 09.55.440(a), "the amount finally awarded" does not include attorney's fees and costs.
B. The Superior Court Did Not Err By Awarding Postjudgment Interest At The Rate of 4.25%.
Keeton argues that the superior court erred by failing to award postjudgment interest at a rate of 10.5% "despite the State's admission" that AS 09.55.440 controlled the interest rate. Keeton's argument rests primarily on the State's proposed form judgment, on which, below the line "Postjudgment Interest Rate," it included the words "Per AS 09.55.440." But AS 09.55.440, by its plain language, addresses only interest "on the amount finally awarded that exceeds the amount paid into court under the declaration of taking," not postjudgment interest on the entire award.[41]
Assuming that the State's citation to AS 09.55.440 was a judicial admission-as Keeton appears to argue-it was one of law, not fact. It therefore could not bind the superior court.[42] The court apparently determined the 4.25% postjudgment interest rate by reference to AS 09.30.070(a), which sets the rate at "three percentage points above the 12th Federal Reserve District discount rate in effect on January 2 of the year in which the judgment or decree is entered...."[43] Keeton does not contend that the rate was incorrectly calculated under this statute, and we see no error in it.
C. Whether It Was An Abuse of Discretion To Quash Keeton's Subpoena For DOT's Billing Records Is Moot.
Keeton asserts that the superior court abused its discretion when it quashed his subpoena for the billing records of DOT's attorneys. He argues that the records are relevant for three reasons: (1) to show that DOT had "ample data to deposit all items of estimated just compensation, including appraiser fees, attorney's fees and costs"; (2) to show DOT's "economic power to sue innocent individuals who dispute its takings valuation in good faith" and overwhelm them with its greater resources; and (3) to show the reasonableness of Keeton's own legal fees. But the parties' relative economic power and the reasonableness of Keeton's own fees have no bearing on our analysis of AS 09.55.440(a), which involves a legal question. And the reasonableness of Keeton's fees is not at issue except to the limited extent addressed below. We therefore consider this argument moot and decline to address it further.[44]
*943 D. Because An Award Of Full Attorney's Fees Is The Norm, The Court On Remand Must State Its Reasons For Excluding Some Fees.
Finally, Keeton argues that the superior court erred by cutting off his entitlement to attorney's fees and the costs of legal services as of May 16, 2017, the date of oral argument on his motion for prejudgment interest. The proceedings that followed included Keeton's unsuccessful pursuit of his subpoena for DOT's attorneys' billing records and his unsuccessful motion for reconsideration of the court's decision on prejudgment interest. DOT concedes that "[t]he superior court did not explain its reasoning" for the cut-off date "in words," but it argues that the court's "rationale ... is readily apparent": in DOT's view, the excluded fees and costs for these unsuccessful endeavors were not "necessarily incurred."
"Full attorney's fees are the norm under Civil Rule 72(k), but those fees must be both reasonable and necessarily incurred to achieve just and adequate compensation for the owner."[45] The superior court thus has considerable discretion to review fees and costs with these standards in mind.[46] We have repeatedly held, however, that because an award of full fees is the norm, "[w]hen a trial court decides not to award full attorney's fees and costs it must state its reasons."[47]
We might be able to infer the court's reasons for excluding certain activities from its fees award, as DOT contends. But given our clear precedent, we must vacate the attorney's fees award and remand for the court to reconsider this aspect of it and to state its reasons for excluding any activities from the award.
V. CONCLUSION
We AFFIRM the judgment of the superior court except with regard to the excluded attorney's fees, which we vacate. We REMAND that issue for reconsideration consistent with this opinion. We do not retain jurisdiction.

AS 09.55.440(a).

Moody v. Royal Wolf Lodge , 339 P.3d 636, 638 (Alaska 2014).

Alaska Airlines, Inc. v. Darrow , 403 P.3d 1116, 1121 (Alaska 2017) (quoting ARCTEC Servs. v. Cummings , 295 P.3d 916, 920 (Alaska 2013) ).

Gibson v. GEICO Gen. Ins. Co. , 153 P.3d 312, 316 (Alaska 2007) ("This court reviews a trial court's discovery rulings for abuse of discretion.").

State v. Doyle , 735 P.2d 733, 743 (Alaska 1987) ("The trial court's decision to award less than a party's actual fees will not be disturbed unless that decision appears to constitute an abuse of discretion.").

We note that the superior court's final judgment appears to contain a minor arithmetic error. It states a total judgment of $ 79,729.12 after adding $ 47,453.12 in attorney's fees and $ 32,276.50 in costs, when that sum should be $ 79,729.62. The superior court also did not include the outstanding $ 7.44 in prejudgment interest in its total judgment, which would have increased the total judgment to $ 79,737.06. Neither party addresses this discrepancy, but the superior court should correct any error in its calculations on remand. See Alaska R. Civ. P. 60(a) ("Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party ...").

City of Anchorage v. Lot 1 in Block 68 , 409 P.2d 609, 613 (Alaska 1966) (quoting Bridges v. Alaska Hous. Auth. , 349 P.2d 149, 154 (Alaska 1959) ).

See id. (holding that strict construction of eminent domain statute did not authorize city to use declaration of taking to condemn property for off-street parking facilities); Bridges , 349 P.2d at 154 (ruling that Alaska Housing Authority could not use declaration of taking); Williams v. City of Valdez , 603 P.2d 483, 491 (Alaska 1979) (finding that statute did not authorize fee simple taking because "an examination of other eminent domain provisions and the principle of strict construction do not allow such an expansive reading").

Alaska Airlines, Inc. v. Darrow , 403 P.3d 1116, 1121 (Alaska 2017).

AS 09.55.420(a).

AS 09.55.430.

AS 09.55.440(a).

Stewart & Grindle, Inc. v. State , 524 P.2d 1242, 1248 (Alaska 1974).

AS 09.55.440(a).

Alaska R. Civ. P. 72(j).

AS 09.55.440(a).

Id. (emphasis added).

Alaska Airlines, Inc. v. Darrow , 403 P.3d 1116, 1127 (Alaska 2017) (quoting Millman v. State , 841 P.2d 190, 194 (Alaska App. 1992) ).

AS 09.55.330.

AS 09.55.430.

AS 09.55.440(a).

State v. Hammer , 550 P.2d 820, 826-27 (Alaska 1976).

Compare AS 09.55.450(a) ("Upon the filing of the declaration of taking and the deposit of the estimated compensation ..."), with AS 09.55.450(b) ("The court may direct the payment of delinquent taxes and special assessments out of the amount determined to be just compensation....").

These additional circumstances include: "the taking of the property is denied"; "the plaintiff appeals from the master's award and the defendant does not appeal"; "the action was dismissed under the provisions of paragraph (i) of this rule"; and "allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the defendant." Alaska R. Civ. P. 72(k)(1), (2), (4) & (5).

The committee considering later amendments gave this example: A condemnor deposits $ 1 million with the court initially and later adds another $ 300,000. The landowner accepts the amount as just compensation and moves for an award of additional interest under Rule 72(k) because the $ 1.3 million is over ten percent greater than the original deposit. The condemnor resists on the ground that some of the additional amount was intended to cover accrued interest or costs. "The new rule requires this information to be set forth in the notice of deposit" in order to prevent such disputes. Condemnation Committee, New Civil Rule 72 with Annotations, 1995, in court file for Alaska Supreme Court Order No. 1216 (Jan. 1, 1996).

Ch. 90, § 3, SLA 1953.

Compare Act of Feb. 26, 1931, ch. 307, § 1, 46 Stat. 1421, with ch. 90, § 3, SLA 1953 ("[T]he judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date title vests in the Territory of Alaska to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid to the clerk of the court.").

State, Dep't of Corr. v. Heisey , 271 P.3d 1082, 1087 (Alaska 2012) ("The United States Supreme Court's holding that the federal certification statute is subject to judicial review is persuasive authority."); Arco Pipeline Co. v. 3.60 Acres, More or Less , 539 P.2d 64, 68 (Alaska 1975) ("Decisions interpreting this federal statute may consequently be considered persuasive for purposes of construing the analogous provisions of our own statutes.").

Act of Feb. 26, 1931, ch. 307, § 1, 46 Stat. 1421.

See id . ("[T]he said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court.").

See Dohany v. Rogers , 281 U.S. 362, 368, 50 S.Ct. 299, 74 L.Ed. 904 (1930) ("Attorneys' fees and expenses are not embraced within just compensation for land taken by eminent domain."). Attorney's fees awards were authorized in limited circumstances by a 1970 amendment to the federal eminent domain procedure. See United States v. 4.18 Acres of Land, More or Less , 542 F.2d 786, 788-89 (9th Cir. 1976) ("The constitutional requirement of just compensation for the taking of land by eminent domain does not include attorneys' fees and expenses.... Congress intended by [the amendment] to create a narrow exception to the general rule of nonrecovery of litigation expenses.").

The statute was also amended in 1959 and 1985, but no material changes to the language of the statute were made. See ch. 146, § 3, SLA 1959; ch. 21, § 3, SLA 1985 (amending to include interest at the rate "set out in AS 09.30.070").

Compare ch. 90, § 3, SLA 1953 ("[T]he judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date title vests in the Territory of Alaska to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid to the clerk of the court."); with ch. 101, § 13.21, SLA 1962 ("The judgment shall include interest at the rate of six percent per year on the amount finally awarded which exceeds the amount paid into court under the declaration of taking.").

See Alaska Legis. Council, Rep. on Eminent Domain in Alaska at 13 (Dec. 1962) ("No change was made in the substantive eminent domain law retained in the Code of Civil Procedure, except in the elimination of a commissioner's hearing on the issue of just compensation and substituting a master's hearing.").

Ch. 26, § 21, SLA 1997.

686 P.2d 682, 691-92 (Alaska 1984).

Id. at 692 n.20.

See Minutes, House Jud. Comm. Hearing on House Bill 157, 14th Leg., 1st Sess. (Feb. 18, 1985) (question from Representative Gruenberg) ("Representative Gruenberg asked about the interest rate set out in section 4. He wondered if this was in conformance to the Valdez decision. Mr. Dierdorff[ ] stated it did.").

Am. Nat'l Watermattress Corp. v. Manville , 642 P.2d 1330, 1343 (Alaska 1982) ; see also Ehredt v. DeHavilland Aircraft Co. of Can. , 705 P.2d 446, 452 (Alaska 1985) ("In Alaska, prejudgment interest is part of compensatory damages."); Beech Aircraft Corp. v. Harvey , 558 P.2d 879, 888 (Alaska 1976) ("[P]rejudgment interest is in the nature of compensatory damages for the use of the money by defendants, not a penalty.").

See Alaska R. Civ. P. 72(k) ; see also Stewart & Grindle, Inc. v. State , 524 P.2d 1242, 1250 (Alaska 1974) ("We believe that Rule 72(k)(4)... does entitle the property owner to be made whole for expenses necessarily incurred in connection with the condemnation of his property.... We think it is apparent that the appraisers' and attorney's fees were 'necessarily' incurred....").

To the extent Keeton relies on State v. Alaska Continental Development Corp. , 630 P.2d 977, 995-96 (Alaska 1980), for the proposition that the higher rate of interest stated in AS 09.55.440(a) applies to the entire judgment and not just the excess of the amount awarded over the estimated compensation, he misreads the case. See id. at 995 n.31 ("[I]nterest is only assessed on the amount of the award in excess of what was deposited by the state at the time of the declaration of taking.").

Dixon v. Blackwell , 298 P.3d 185, 189 (Alaska 2013) (quoting Hayes v. Xerox Corp. , 718 P.2d 929, 931 (Alaska 1986) ("A judicial admission, to be binding, must be one of fact and not a conclusion of law.")).

AS 09.30.070(a).

See Martinez-Morales v. Martens , 367 P.3d 1167, 1170 (Alaska 2016) (holding that a claim "is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails" (quoting Alaska Fur Gallery v. First Nat'l Bank Alaska , 345 P.3d 76, 96-97 (Alaska 2015) )).

Vezey v. State , 798 P.2d 327, 335 (Alaska 1990) (quoting Res. Invs. v. State, Dep't of Transp. & Pub. Facilities , 687 P.2d 280, 283 (Alaska 1984) ).

See Res. Invs. , 687 P.2d at 283.

Vezey , 798 P.2d at 335 ; Res. Invs. , 687 P.2d at 283 ; Triangle, Inc. v. State , 632 P.2d 965, 970 (Alaska 1981) ("If, upon remand, the superior court determines that full attorney's fees and costs are not warranted, it must articulate its reasons for so ruling.").